DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

| | | |
|---|---|---|
| RIAN WATTS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 2011-61 |
| | ) | |
| TANYA BLAKE-COLEMAN; FIRSTBANK | ) | |
| PUERTO RICO, d/b/a FIRSTBANK | ) | |
| VIRGIN ISLANDS, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

ATTORNEYS:

**Joseph A. DiRuzzo, III, Esq.**
Fuerst Ittleman, PL
Miami, FL
    *For Rian Watts.*

**Treston E. Moore, Esq.**
Moore Dodson & Russell, P.C.
St. Thomas, U.S.V.I.
    *For Tanya Blake-Coleman.*

**Stefan B. Herpel, Esq.**
Dudley Topper & Feuerzeig
St. Thomas, U.S.V.I.
    *For FirstBank Puerto Rico, d/b/a FirstBank Virgin Islands.*


<u>**MEMORANDUM OPINION**</u>

**GÓMEZ, C.J.**

    Before the Court are the motions of FirstBank Puerto Rico,
d/b/a FirstBank Virgin Islands and Tanya Blake-Coleman to
dismiss this matter pursuant to Federal Rule of Civil Procedure
12(b)(6).

*Watts v. Blake-Coleman, et al.*
Civil No. 2011-61
Memorandum Opinion
Page 2

## I. <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

In April, 2009, Rian Watts ("Watts") and David Morrell ("Morrell") were interested in purchasing a furnished home located at 2-21 Bonne Esperance, St. Thomas, Virgin Islands (the "Property"). Tanya Blake-Coleman ("Blake-Coleman"), a licensed real estate broker, represented William Limpert and Tammy Piner, the sellers of the Property (the "sellers"). Blake-Coleman was employed by My Dream Properties, Inc., d/b/a Re/Max Dream Properties ("Dream"). Dream was owned by Rosemary Sauter ("Sauter"), a licensed real estate broker.

Morrell and Watts entered into a land sale contract with the sellers for the sale of the Property for $390,000 (the "contract"). Pursuant to the contract, Watts deposited $227,000 in the Dream escrow account at FirstBank (the "escrow deposit"). Morrell's obligations under the contract were contingent on him obtaining a financing commitment from a lending institution in the Virgin Islands. In the event that no financing commitment could be obtained, the escrow deposit was to be returned to Morrell.

Subsequently, Watts and Morrell were unable to obtain financing to purchase the Property in the time called for in the contract. Watts and Morrell then requested that Dream return the escrow deposit. Dream did not return the escrow deposit.

*Watts v. Blake-Coleman, et al.*
Civil No. 2011-61
Memorandum Opinion
Page 3

On or about February 9, 2010, media reports revealed that authorities in the Virgin Islands had issued arrest warrants for Sauter. Sauter was suspected of stealing approximately $2.5 million from the Dream escrow account at FirstBank.

Watts filed a complaint in this Court on May 27, 2011.[1] In her complaint, Watts asserts three causes of action. Count One alleges that FirstBank and Blake-Coleman negligently entrusted Sauter with the escrow deposit. Count Two alleges that FirstBank breached its fiduciary duty to Watts by failing to investigate Sauter's background. Count Three alleges that FirstBank and Blake-Coleman converted to their own use the escrow deposit.

FirstBank and Blake-Coleman now move to dismiss this matter pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II. <u>DISCUSSION</u>

In order to survive a motion to dismiss, a plaintiff must offer "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A court must ask whether the complaint "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory." *Twombly*, 550 U.S. at 562 (emphasis in

---

[1] As of the date of the complaint, Sauter was a fugitive. Dream was in bankruptcy.

*Watts v. Blake-Coleman, et al.*
Civil No. 2011-61
Memorandum Opinion
Page 4

original) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Id.* at 555 (internal citations omitted). Thus, "[t]o survive a motion to dismiss, a . . . plaintiff must allege facts that 'raise a right to relief above the speculative level on the assumption that the allegations in the complaint are true (even if doubtful in fact).'" *Victaulic Co. v. Tieman*, 499 F.3d 227, 234 (3d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

"Generally, a district court may not consider matters outside the Complaint when ruling on a motion to dismiss." *Cerome v. Moshannon Valley Corr. Center*, 2010 U.S. App. LEXIS 24938, at *9 (3d Cir. 2010). If matters outside of the pleadings are presented to and not excluded by the court, the motion must generally be treated as one for summary judgment under Rule 56. *Id*. "However, 'an exception to the general rule is that a document *integral to or explicitly relied upon* by the complaint may be considered without converting the motion [to dismiss]

*Watts v. Blake-Coleman, et al.*
Civil No. 2011-61
Memorandum Opinion
Page 5

into one for summary judgment.'" *Id.* (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)) (citation and internal quotation marks omitted); *see also In re Trump*, 7 F.3d 357, 368 n.9 (3d Cir. 1993) ("a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.") (internal citation and quotation marks omitted).

## III. <u>ANALYSIS</u>

FirstBank argues that Watts has failed to state a claim upon which relief may be granted because none of Watts's three theories of liability are legally cognizable as against First Bank. Specifically, FirstBank argues that the elements of negligent entrustment and conversion are not satisfied by the allegations in the complaint. FirstBank also argues that, with regard to the breach of fiduciary claim, FirstBank had no legal duty to Watts.

Similarly, Blake-Coleman argues that Watts has failed to state a claim upon which relief may be granted because the elements of negligent entrustment and conversion are not satisfied by the allegations in the complaint.

"To determine the sufficiency of a complaint . . . a court must take three steps: First, the court must 'tak[e] note of the

*Watts v. Blake-Coleman, et al.*
Civil No. 2011-61
Memorandum Opinion
Page 6

elements a plaintiff must plead to state a claim.' . . . .

Second, the court should identify allegations that, 'because

they are no more than conclusions, are not entitled to the

assumption of truth' . . . . Finally, 'where there are well-

pleaded factual allegations, a court should assume their

veracity and then determine whether they plausibly give rise to

an entitlement for relief.'" *Santiago v. Warminster Tp.*, 629

F.3d 121, 130 (3d Cir. 2010)(quoting *Ashcroft v. Iqbal*, 556 U.S.

662, 881 (2009)).

## A. Negligent Entrustment

The Restatement (Second) of Torts[2] aids in understanding

what is required for a negligent entrustment claim. The

Restatement explains generally that:

> It is negligence to permit a third person to use a
> thing or to engage in an activity which is under the
> control of the actor, if the actor knows or should
> know that such person intends or is likely to use the
> thing or to conduct himself in the activity in such a
> manner as to create an unreasonable risk of harm to
> others.

Restatement (Second) of Torts § 308 (1965)(providing

illustrations of negligent entrustment which involve the

---

[2] Under Virgin Islands law, "[t]he rules of the common law, as expressed in the
restatements of the law ... shall be the rules of decision in the courts of the
Virgin Islands ... in the absence of local laws to the contrary." V.I. Code Ann.
tit. 1, § 4.

*Watts v. Blake-Coleman, et al.*
Civil No. 2011-61
Memorandum Opinion
Page 7

entrustment of motor vehicles and guns). The Restatement also

provides that

> One who supplies directly or through a third person a
> chattel for the use of another whom the supplier knows
> or has reason to know to be likely because of his
> youth, inexperience, or otherwise, to use it in a
> manner involving unreasonable risk of physical harm to
> himself and others whom the supplier should expect to
> share in or be endangered by its use, is subject to
> liability for *physical* harm resulting to them.

Restatement (Second) of Torts § 390 (1965)(emphasis added).[3]

In support of her negligent entrustment claim, Watts states

that,

> 21. On May 21, 2009, Watts wired to the My Dreams
> Properties, Inc. escrow account at First Bank (USVI)
> $227,000.00 to be held in escrow deposit for the
> property that was subject of the land sale contract.

> 22. As a realtor licensed by the Board of Realtors in
> the USVI, Coleman had a duty to Watts and Morrell to
> hold the escrow deposit in trust to effectuate the
> land sale contract.

> 23. As a bank holding escrow deposits, First Bank
> (USVI) had a duty to hold the escrow deposit in trust
> unless it received orders for withdrawal that under
> due diligence investigation were consistent with the
> terms of the escrow and to effectuate the sale of
> property pursuant to land sale contracts.

---

[3] The Restatement provides examples of negligent entrustment. In each of the
examples, negligent entrustment results in physical, as opposed to economic harm.
See Restatement (Second) of Torts § 390 cmt. b, illus. 1-6 (illustrating negligent
entrustment where an incompetent girl is given a loaded gun and discharges it,
harming someone; where a young boy is allowed to drive a car and collides with
someone; where a known speeder is allowed to borrow a car and collides with
someone while speeding; where a known drunk driver is allowed to drive and
collides with someone while intoxicated; where a man is allowed to rent a car
after informing the rental agent that he plans to speed and he subsequently
collides with someone while speeding; and where a man sells a car to his epileptic
son who later has a seizure while driving and collides with someone).

*Watts v. Blake-Coleman, et al.*
Civil No. 2011-61
Memorandum Opinion
Page 8

24. First Bank (USVI) did not perform adequate due diligence on Rosemary Sauter, as owner of My Dreams Properties, Inc., otherwise it would have discovered that Sauter was a convicted felon who previously had stolen money from a California development company.

25. Coleman and First Bank (USVI) breached their duties to Plaintiff by allowing Rosemary Sauter, a convicted felon, to withdraw and steal Watts' escrow deposit from First Bank (USVI).

26. As a result of Defendants' negligent entrustment of the escrow deposit, Watts has suffered damages in the sum of $227,000.00.

(Second Am. Compl. ¶¶ 21, 23-26, ECF No. 7).

Watts would have the Court apply the doctrine of negligent entrustment where only financial injury resulted from the alleged negligent entrustment. Virgin Islands courts have only applied the doctrine to cases involving physical harms. *See, e.g.*, *Warrington v. Camacho*, 2007 U.S. Dist. LEXIS 78715, at *3 (D.V.I. 2007)(addressing a negligent entrustment claim where a defendant allowed his friend to drive his rental car and the friend subsequently caused a collision, injuring the plaintiff); *Baron by & Through Baron v. Rosario*, 982 F. Supp. 1037 (D.V.I. 1997)(addressing a negligent entrustment claim where a defendant's nephew used the defendant's car without permission and collided with another car, causing injuries to others). Watts does not allege that she was physically harmed. Rather, Watts alleges that she was financially harmed. Watts has not

*Watts v. Blake-Coleman, et al.*
Civil No. 2011-61
Memorandum Opinion
Page 9

offered, and the Court is unaware of, any cases from the Virgin Islands or elsewhere in the Third Circuit, which apply the doctrine of negligent entrustment to other than physical harms.

Looking outside of the Third Circuit, the Court is aware of at least one other circuit that has addressed a similar issue. In *Doyle v. Hasbro*, 103 F.3d 186 (1st Cir. 1996), the plaintiffs sought recovery on a negligent entrustment theory for economic harm. The First Circuit cited to various Massachusetts state cases (which cited to the Restatement) in laying out the requirements for a negligent entrustment claim. In doing so, the Circuit noted that

> The tort of negligent entrustment is used in cases in which a defendant has entrusted a motor vehicle to an incompetent driver, resulting in injury. [] The tort has also been applied to suppliers....
>
> Plaintiffs-appellants would have us apply the doctrine to the instant case. They have not offered, and our own research has failed to uncover, any cases from Massachusetts or elsewhere in this circuit, applying the doctrine to facts that resemble those at bar.
>
> .... The relationship between a firm and its employees is very different from the relationships usually at issue in negligent entrustment cases. The latter normally involve a parent or other adult entrusting a minor or incompetent person with a motor vehicle or some other instrumentality. An action for negligent entrustment involves a person's duty to keep a dangerous instrumentality out of a child's reach. While it may be possible to point to similarities between the current application of the doctrine and the one advocated by plaintiffs-appellants, we believe that the differences are much more striking.

*Watts v. Blake-Coleman, et al.*
Civil No. 2011-61
Memorandum Opinion
Page 10

> Furthermore, plaintiffs-appellants offer no convincing
> argument showing why the application of the doctrine
> in this context would be desirable. ... Because the
> question before us is one of state law, we must
> exercise considerable caution when considering the
> adoption of a new application. As a federal court
> hearing this state law issue under our supplemental
> jurisdiction, we are reluctant to extend [state] law
> beyond its well-marked boundaries. ...

*Doyle*, 103 F.3d at 192 (applying Massachusetts common law)
(internal quotations and citations omitted). The Circuit
affirmed the district court's dismissal of the plaintiffs'
negligent entrustment claim.

The Court finds the First Circuit's analysis persuasive. As
noted by the *Doyle* court, "[t]he question for this court,
therefore, is whether we should expand the present reach of the
tort of negligent entrustment..." *Doyle*, 103 F.3d at 192. The
relationship between a bank and its depositors, as well as a
relationship between an employee and her employer, are "very
different from the relationships usually at issue in negligent
entrustment cases." *See id*. As a federal court hearing this
territorial law issue under the Court's diversity jurisdiction,
the Court is disinclined to extend territorial law beyond its
"well-marked boundaries." *See* id.

As such, Watts fails to allege a claim for negligent
entrustment as to FirstBank and as to Blake-Coleman.

*Watts v. Blake-Coleman, et al.*
Civil No. 2011-61
Memorandum Opinion
Page 11

### B. Breach of Fiduciary Duty

"One standing in a fiduciary relation with another is subject to liability to the other for harm resulting from a breach of duty imposed by the relation." Restatement (Second) of Torts § 874 (1979). "A fiduciary relation exists between two persons when one of them is under a duty to act for or to give advice for the benefit of another upon matters within the scope of the relation." *Id.* at cmt. a. As such, to establish a claim for breach of a fiduciary duty: (1) there must be a fiduciary relationship, (2) the fiduciary must have breached its duty imposed by such relationship, (3) the plaintiff must have been harmed, and (4) the fiduciary's breach must be a proximate cause of the plaintiff's harm.

> The local rules of procedure, the type of relation between the parties and the intricacy of the transaction involved, determine whether the beneficiary is entitled to redress at law or in equity.... the liability is not dependent solely upon an agreement or contractual relation between the fiduciary and the beneficiary but results from the relation.

*Id.* at cmt. b.

In support of her breach of fiduciary duty claim, Watts states that

> 28. First Bank (USVI), as the bank holding escrow deposits for My Dream Properties, Inc., has a fiduciary duty to those from whom it receives funds to be held in trust.

*Watts v. Blake-Coleman, et al.*
Civil No. 2011-61
Memorandum Opinion
Page 12

     29. Rian Watts wired $227,000.00 into the My Dream Properties, Inc. escrow account held at First Bank (USVI). Sauter was able to take those monies from the escrow account without providing First Bank (USVI) adequate documentation supporting a withdrawal from the escrow account.

     30. As the bank holding the escrow account for My Dream Properties, Inc., the bank had a due diligence obligation to know the background of those with the ability to remove funds from the account.

     31. The bank breached its duties to Watts by failing to investigate Sauter's background, which would have revealed she was a convicted felon, having previously stolen money from a development company.

     32. The bank also breached its duties to Watts by failing to ensure that the escrow deposit were [sic] being used for the purposes meant for the escrow account—to effectuate the real estate closing on the property described in exhibit A.

     33. As a result of the bank's breach of fiduciary duty to Watts, Watts suffered damages in the sum of $227,000.00.

(Second Am. Compl. ¶¶ 29-33, ECF No. 7).

     The Court is unaware of any Virgin Islands case which has held that a bank has a fiduciary relationship with a non-customer. Indeed, Virgin Islands courts have been cautious in finding the existence of a fiduciary relationship even as between a bank and one of its customers. *See, e.g.*, *LPP Mortg., Ltd. v. Caledonia Springs, Inc.*, 2007 U.S. Dist. LEXIS 98213, *33 (D.V.I. Nov. 6, 2007)(finding no fiduciary relationship where the plaintiff and the bank engaged in a "quintessential arms-length, lender and borrower relationship...")*; Charleswell*

*Watts v. Blake-Coleman, et al.*
Civil No. 2011-61
Memorandum Opinion
Page 13

*v. Chase Manhattan Bank, N.A.*, 308 F. Supp. 2d 545 (D.V.I. 2004)(finding a fiduciary relationship where a bank acted as insurer and insurance broker pursuant to its mortgage contract with the plaintiff); *Fin. Trust Co. v. Citibank, N.A.*, 268 F. Supp. 2d 561, 573 (D.V.I. 2003)(finding adequate facts to allege a fiduciary relationship where "the [bank] cultivated a relationship of trust with the plaintiffs over fifteen-years as their private banker."); *Jo-Ann's Launder Ctr. v. Chase Manhattan Bank, N.A.*, 854 F. Supp. 387, 392 (D.V.I. 1994)(finding no fiduciary relationship between lender-bank and borrower-plaintiff where they "operated at arms-length and the parties each acted in their own interest.")

Furthermore, the Restatement (Second) of Trusts provides examples of fiduciary relations, explaining that

> Fiduciary relations include not only the relation of trustee and beneficiary, but also, among others, those of guardian and ward, agent and principal, attorney and client. Each member of a partnership is a fiduciary relation to the other partners. The scope of the transactions affected by the relation and the extent of the duties imposed are not identical in all fiduciary relations....

Restatement (Second) of Trusts § 2, cmt. b (1959). Significantly, neither the Restatement, nor courts interpreting it, recognize a fiduciary relationship where, as here, there is at best an arms-length, passive, and unintended relationship.

*Watts v. Blake-Coleman, et al.*
Civil No. 2011-61
Memorandum Opinion
Page 14

The Court finds no occasion to extend the scope of

fiduciary relations to such passive interactions between a bank

and a non-customer. As such, Watts fails to state a claim for

breach of fiduciary duty as to FirstBank.

**C. Conversion**

Conversion is the intentional exercise of "dominion or

control over a chattel which so seriously interferes with the

right of [the plaintiff] to control it that the [defendant] may

justly be required to pay the [plaintiff] the full value of the

chattel." *Addie v. Kjaer*, 51 V.I. 463, **473 (2009)(citing

Restatement (Second) of Torts § 222A). Under the Restatement

(Second) of Torts, "[a] bailee, agent, or servant who makes an

unauthorized delivery of a chattel is subject to liability for

conversion to his bailor, principal, or master unless he

delivers to one who is entitled to immediate possession of the

chattel." Restatement (Second) of Torts § 234 (1965). The

Restatement (Second) of Torts also provides that "[o]ne in

possession of a chattel as bailee or otherwise who, on demand,

refuses without proper qualification to surrender it to another

entitled to its immediate possession, is subject to liability

for its conversion." *Id.* at § 237.

In support of her conversion claim, Watts alleges that,

35. On May 21, 2009 Defendants converted to their own
use an escrow deposit of $227,000.00 wired from Rian

> Watts that was specifically identified to be the escrow deposit for the land sale contract attached as Exhibit A.

(Second Am. Compl. ¶ 35, ECF No. 7). However, Watts does not allege facts supporting her bare assertion that FirstBank and Blake-Coleman "converted to their own use an escrow deposit of $227,000..." *Id*. Paragraph 35 of the second amended complaint is a conclusory statement and "formulaic recitation" of an element of a conversion claim. As such, the statement is not entitled to the assumption of truth. *See generally*, *Fowler v. UPMC Shadyside*, 578 F.3d 203, 206 (3d Cir. 2009) (stating that a court "must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions.").

Watts also alleges that,

> 10. The obligations of the buyer in the land sale contract were contingent on buyer obtaining a financing commitment from a lending institution in the USVI. In the event that no financing commitment could be obtained, the entire escrow deposit would be returned to buyer. *See*, paragraph 13, Exhibit "A".

> 11. In order to pay the escrow deposit called for from Morrell in the land sale contract, Rian Watts executed a gift letter on April 13, 2009 stating that she had given $227,000 to Morrell to be used for the purchase of the property.

> 12. On May 21, 2009, pursuant to instructions from Coleman, Watts wired $227,000 of her money to the My Dream Properties, Inc. escrow account at First Bank (USVI) for the purchase of the property. The bank charged a $10.00 wire fee, making the net transfer amount $226,990.00. *See* copy of wire transfer advice, attached as Exhibit "B".

*Watts v. Blake-Coleman, et al.*
Civil No. 2011-61
Memorandum Opinion
Page 16

13. Watts and Morrell were not able to obtain financing for the entire purchase price of the property in the requisite time called for in the land sale contract. According to the contract, time was of the essence.

14. Pursuant to the terms of paragraph 13 of the land sale contract, if a financing commitment was not obtained by the buyer, the escrow deposit was to be refunded to the buyer in full.

15. Watts and Morrell demanded of Coleman the return of the escrow deposit of $227,000.00 from the escrow account of My Dream Properties, Inc. The deposit was never refunded to Morrell or Watts despite repeated demands to the realtor, Coleman, and ultimately to the owner of My Dream Properties, Inc., Rosemary Sauter.

16. Coleman acknowledged in an e-mail communication on November 12, 2009 with counsel for Watts and Morrell that My Dream Properties, Inc. had no claim to the escrow deposit. Demand was made again for return of the escrow deposit to no avail.

17. On or about February 9, 2010, media reports revealed that authorities in the USVI had issued warrants for Rosemary Sauter, the owner of My Dream Properties, Inc., d/b/a Re/Max Dream Properties, for stealing approximately $2.5 million from the My Dream Properties, Inc. escrow account at First Bank (USVI). Sauter is a fugitive. My Dream Properties, Inc. is currently in bankruptcy.
                              ...

19. On January 10, 2011, Morrell executed a "mutual recisson of gift" which quit claimed any interest he had in the gifted $227,000 back to Rian Watts. Watts is the legal and equitable owner of the funds.
                              ...

34. Plaintiff realleges and incorporates paragraphs 1-19 of this Complaint herein.

36. Despite repeated demands for the return of the escrow deposit to Watts or Morrell, such demands have been refused.

37. As a result of the Defendants' conversion of the escrow deposit, Watts has been damaged in the sum of $227,000.00

(Second Am. Compl. ¶¶ 36-37, ECF No. 7).

Regarding Watts's "rights as owner" of the escrow deposit, she alleges that "[i]n the event that no financing commitment could be obtained," she was entitled to the return of her escrow deposit. (Second Am. Compl. ¶ 10, ECF No. 7). Watts also alleges that she placed the deposit in Dream's escrow account at its employee's (Blake-Coleman's) direction. *Id.* at ¶ 12. Watts alleges that she demanded that Blake-Coleman return her deposit. *Id.* at ¶ 15. Watts also alleges that Blake-Coleman did not return her deposit. *Id.* at ¶¶ 15, 16, 36. As such, Watts sufficiently states a claim for conversion as to Blake-Coleman. *See* Restatement (Second) of Torts § 237.

Watts however does not allege that she demanded that FirstBank return the escrow deposit. She also fails to allege that FirstBank made an "unauthorized delivery" of the escrow deposit to Sauter. *See Addie*, 51 V.I. at **474. The Court cannot infer from the allegations in the complaint that the funds were *delivered* by FirstBank to Sauter. *See* Restatement (Second) of Torts § 234 cmt. b ("The rule stated in this Section applies

*Watts v. Blake-Coleman, et al.*
Civil No. 2011-61
Memorandum Opinion
Page 18

only where there is delivery of the chattel.... the mere loss of

possession of the chattel is not enough in itself to result in

liability, even where it is the result of negligent

conduct....") As such, Watts fails to state a conversion claim

as to FirstBank.

*Watts v. Blake-Coleman, et al.*
Civil No. 2011-61
Memorandum Opinion
Page 19

### IV.  CONCLUSION

For the reasons discussed above, the Court will dismiss Counts One, Two, and Three, as to FirstBank.[4] The Court will dismiss Count One as to Blake-Coleman. The Court will deny Blake-Coleman's motion to dismiss Count Three.

As such, Count Three is the only surviving claim insofar as it asserts a claim for conversion against Blake-Coleman. An appropriate order follows.

S\ _____
        **Curtis V. Gómez**
        **Chief Judge**

---

[4] In her opposition to FirstBank's motion to dismiss, Watts states that "[i]f the Court is inclined to grant First Bank's Motion to Dismiss, Watts requests leave to re-plead and file an amended complaint, within 14 days of the court's order." (Plf.'s Opp. Mot. Dismiss 9, ECF No. 17). Generally, leave to amend a complaint should be given when counts in the complaint are dismissed for failure to state a claim. *See Phillips v. Sheraton Soc'y Hill*, 163 Fed. Appx. 93, 94 (3d Cir. 2005)("Even when a plaintiff does not seek leave to amend, if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment unless an amendment would be inequitable or futile.") However, that allowance is not absolute. *See, e.g., Lake v. Arnold*, 232 F.3d 360, 374 (3d Cir. 2000)(denying leave to amend where the plaintiff failed to attach a proposed amended complaint to its motion and the court had "already granted the requesting party an opportunity to amend its complaint.") A plaintiff's "failure to provide a draft amended complaint" is "an adequate basis on which the court could deny [a] plaintiff's request" to amend. *Id.* Without a proposed amended complaint, a court "cannot evaluate the merits of a plaintiffs' request" and has "nothing upon which to exercise its discretion." *Id.* Watts has not provided a proposed amended complaint. Moreover, Watts has had two opportunities to amend her complaint. As such, the Court currently has no record evidence before it to support a grant of leave to file a third amended complaint.