```
                DISTRICT COURT OF THE VIRGIN ISLANDS
                 DIVISION OF ST. THOMAS AND ST. JOHN

RIAN WATTS,                      )
                                 )
          Plaintiff,             )
                                 )
     v.                          )    Civil No. 2011-61
                                 )
TANYA BLAKE-COLEMAN,             )
                                 )
          Defendant.             )
                                 )
```

ATTORNEYS:

**Rian Watts**
    *Pro se plaintiff.*

**Treston E. Moore, Esq.**
Moore Dodson & Russell, P.C.
St. Thomas, U.S.V.I.
    *For Tanya Blake-Coleman.*

<u>MEMORANDUM OPINION</u>

**GÓMEZ, C.J.**

This matter came before the Court for trial on February 19, 2013. For the reasons stated herein, the Court will dismiss this matter.

## I. <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

In April, 2009, Rian Watts ("Watts") and David Morrell ("Morrell") were interested in purchasing a furnished home located at 2-21 Bonne Esperance, St. Thomas, Virgin Islands (the "Property"). Tanya Blake-Coleman ("Blake-Coleman"), a licensed real estate broker, represented William Limpert and Tammy Piner,

the sellers of the Property (the "sellers"). Blake-Coleman was employed by My Dream Properties, Inc., d/b/a Re/Max Dream Properties ("Dream"). Dream was owned by Rosemary Sauter ("Sauter"), a licensed real estate broker.

Morrell and Watts entered into a land sale contract with the sellers for the sale of the Property for $390,000 (the "contract"). Pursuant to the contract, Watts deposited $227,000 in the Dream escrow account at FirstBank (the "escrow deposit"). Morrell's obligations under the contract were contingent on him obtaining a financing commitment from a lending institution in the Virgin Islands. In the event that no financing commitment could be obtained, the escrow deposit was to be returned to Morrell.

Subsequently, Watts and Morrell were unable to obtain financing to purchase the Property in the time called for in the contract. Watts and Morrell then requested that Dream return the escrow deposit. Dream did not return the escrow deposit.

On or about February 9, 2010, media reports revealed that authorities in the Virgin Islands had issued arrest warrants for Sauter. Sauter was suspected of stealing approximately $2.5 million from the Dream escrow account at FirstBank.

Watts filed a complaint in this Court on May 27, 2011.[1] In her complaint, Watts asserted three causes of action. Count One alleged that FirstBank and Blake-Coleman negligently entrusted Sauter with the escrow deposit. Count Two alleged that FirstBank breached its fiduciary duty to Watts by failing to investigate Sauter's background. Count Three alleged that FirstBank and Blake-Coleman converted to their own use the escrow deposit.

Subsequently, FirstBank and Blake-Coleman moved to dismiss this matter pursuant to Federal Rule of Civil Procedure 12(b)(6).

In a March 29, 2012, Order, the Court dismissed all claims asserted against FirstBank. The Court dismissed Count One as to Blake-Coleman. The Court denied Blake-Coleman's motion to dismiss Count Three. As such, Count Three is the only surviving claim insofar as it asserts a claim for conversion against Blake-Coleman.

Blake-Coleman then filed a motion for summary judgment. Blake-Coleman also filed a motion to dismiss for failure to prosecute. Watts has not opposed either motion.

---

[1] As of the date of the complaint, Sauter was a fugitive. Dream was in bankruptcy.

This matter came before the Court for trial on February 19, 2013. Despite being served, neither Watts nor any representative on her behalf appeared at trial.

Due to Watts's failure to appear at trial (in addition to her failure to appear for various pre-trial matters) the Court stated that it was inclined to grant Blake-Coleman's motion to dismiss for failure to prosecute.

## II. DISCUSSION

Pursuant to Federal Rule of Civil Procedure 41, a court may dismiss a matter for a plaintiff's failure to prosecute. Before such a dismissal occurs, however, a district court must consider six factors outlined in *Poulis v. State Farm Fire and Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984). In *Poulis*, the Third Circuit stated that a district court must balance the following factors:

> 1) the extent of the *party's* personal *responsibility*; (2) the *prejudice* to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a *history* of dilatoriness; (4) whether the conduct of the party or the attorney was *willful* or in *bad faith*; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of *alternative sanctions*; and (6) the *meritoriousness* of the claim or defense.

*Id*. (explaining that "dismissal is a drastic sanction and should be reserved for those cases where there is a clear record of delay or contumacious conduct by the plaintiff")(alteration in original); *see also In re E Toys Inc.*, 263 Fed. App'x 235, 237

(3d Cir. 2008) (affirming the district court's dismissal for failure to prosecute upon consideration of the *Poulis* factors).

"Not all of the[] *Poulis* factors need be met for a district court to find dismissal is warranted." *Hicks v. Feeney,* 850 F.2d 152, 156 (3d Cir. 1988). However, courts must consider and balance all six *Poulis* factors before dismissing a case with prejudice, and all doubts must be resolved in favor of an adjudication on the merits. *See $8,221,877.16 in U.S. Currency,* 330 F.3d 141, 161 (3d Cir. 2003) ("[W]e have always required consideration and balancing of all six of the factors, and have recommended the resolution of any doubts in favor of adjudication on the merits."); *see also Bjorgung*, 197 Fed. App'x at 125-26 ("Although '[n]ot all of the Poulis factors need be satisfied in order to dismiss a complaint' they must all be considered") (quoting *Mindek v. Rigatti*, 964 F.2d 1369, 1373 (3d Cir. 1992)).

### III. ANALYSIS

The Court will apply each of the *Poulis* factors to the facts of the instant matter.

**1. Personal Responsibility**

The first *Poulis* factor assesses the extent of the appellant's personal responsibility. 747 F.2d at 868.

Here, Watts is a pro se plaintiff. She is solely responsible for the prosecution of this case. She has failed to respond to discovery requests, as well as the defendant's Motion to Compel Discovery, Motion for Summary Judgment, and Motion to Dismiss for Failure to Prosecute. She has failed to appear at status conferences, as well as trial. In addition, Watts has failed to offer any explanation for the above-referenced failures. As such, the first *Poulis* factor weighs in favor of dismissal.

**2. Prejudice**

The second *Poulis* factor considers prejudice to the defendant caused by the plaintiff's failure to meet scheduling orders and respond to discovery. 747 F.2d at 868. Prejudice for the purpose of the *Poulis* factors "does not mean 'irremediable harm.'" *See Ware v. Rodale Press, Inc.*, 322 F.3d 218, 222 (3d Cir. 2003); *see also Curtis T. Bedwell and Sons, Inc. v. Int'l Fidelity Ins. Co.*, 843 F.2d 683, 693-94 (3d Cir. 1988) (rejecting the argument that "the district court should not have dismissed its claim . . . unless the harm to the other parties amounted to 'irremediable prejudice'"). Rather, the burden imposed by impeding the opposing party's ability to prepare a meaningful litigation strategy has been held to be sufficiently prejudicial. *See Ware,* 322 F.3d at 222.

Here, Watts's failure to meet scheduling orders and respond to discovery and motions has prejudiced Blake-Coleman in her preparation of this case. For instance, Watts's failure to reply to Blake-Coleman's motion for summary judgment deprived Blake-Coleman of the opportunity to possibly have the claims against her disposed of summarily. Additionally, Watts's failure to attend status conferences and the trial wasted the time of Blake-Coleman, the Magistrate Judge, and the Court. As such, the Court finds that the second *Poulis* factor weighs in favor of dismissal.

**3. History**

The third *Poulis* factor requires the Court to review the plaintiff's history of dilatoriness. 747 F.2d at 868. That review revealed several instances of dilatoriness, some of which are outlined below.

> **April 25, 2012**: The Magistrate Judge held a hearing on Attorney Joseph DiRuzzo's motion to withdraw as Watts's counsel. Watts did not appear, despite being ordered to do so. The Magistrate found that it did "not appear from the record that counsel served the plaintiff with notice of the hearing, as ordered." (ECF No. 45.) As such, the Magistrate continued the hearing until May 21, 2012.

**May 21, 2012**: The Magistrate again attempted to hold a hearing on the motion to withdraw. Despite notice and being ordered to appear, Watts failed to appear.[2]

**January 2, 2013**: Blake-Coleman moved for summary judgment. Watts did not respond.

**January 7, 2013**: Watts's response to the defendant's motion to compel was due. Watts did not respond.

**January 9, 2013**: The Magistrate held a status conference. Despite being ordered to appear, Watts did not appear at the conference. Defense counsel stated that she had tried on numerous occasions to contact Watts, to no avail. Defense counsel emailed Watts a copy of the motion to compel.

**January 25, 2013**: Blake-Coleman moved to dismiss for failure to prosecute. Watts did not respond.

**February 13, 2013**: The Magistrate held a final pretrial conference. Despite being ordered to appear, Watts did not appear at the conference. The Courtroom Deputy tried numerous times to contact Watts via phone. Watts did not answer.

**February 19, 2013**: The trial in this matter commenced at 9:30 a.m. Despite being ordered to appear and receiving notice of the trial date, Watts did not appear at trial.

Watts has a sufficient history of dilatoriness in this matter such that the third *Poulis* factor weighs in favor of dismissal. *See, e.g., In re Buccolo*, 308 Fed. App'x 574, at *575 (3d Cir. 2009) (affirming the district court's dismissal of the

---

[2] On October 18, 2012, the Magistrate held a telephonic status conference. Watts participated in the conference. During the conference Watts agreed to allow her counsel to withdraw. As such, the motion to withdraw was granted. Thereafter, Watts did not retain substitute counsel.

matter for failure to prosecute where the litigant failed to comply with numerous court orders).

### 4. Willfulness

The fourth *Poulis* factor requires that the Court consider whether the plaintiff's conduct was willful or in bad faith. 747 F.2d at 868.

Here, Watts has made no effort to move this case forward. Indeed, Watts has failed to: communicate with the Court and Blake-Coleman, appear at Court-ordered hearings, respond to motions, and appear at trial. Watts has certainly demonstrated a willful disregard for the Court's orders and for the judicial process in general. *See, e.g., In re E Toys Inc.*, 263 Fed. App'x 235, 238 (3d Cir. 2008) (finding "willful disregard" where the litigant disregarded deadlines issued by the court). The fourth *Poulis* factor therefore weighs in favor of dismissal.

### 5. Alternate Sanctions

The fifth *Poulis* factor assesses the effectiveness of sanctions other than dismissal. 747 F.2d at 868.

The Court could impose a fine against Watts as a penalty for her failure to comply with the Court's orders. *See Poulis*, 747 F.2d at 869. Alternatively, the Court could consider the propriety of ordering Watts to pay the defendant's attorneys' fees accumulated up to this point. *See id*. However, Watts has

made it clear that she is in no hurry to prosecute this matter. Thus, it is unlikely that such financial sanctions would somehow prompt Watts to prosecute her complaint after a six month absence.

Based on Watts's absence thus far, it is not evident that alternative sanctions will prompt her to take action in prosecuting this matter. As such, the ineffectiveness of alternative sanctions weighs in favor of dismissal. *Cf. In re Richardson Industrial Contractors, Inc.*, 189 Fed. App'x 93, at *98 (3d Cir. 2006) (finding dismissal inappropriate where the litigant requested two extensions and complied with the court's order prior to dismissal).

## 6. Merit

The sixth *Poulis* factor considers the meritoriousness of the litigant's claim. 747 F.2d at 868. "Ordinarily, '[a] claim, or defense, will be deemed meritorious when the allegations of the [motion], if established [], would support recovery by [a] plaintiff or would constitute a complete defense." *Buccolo*, 308 Fed. App'x 574, at n.1 (quoting *Poulis*, 747 F.2d at 869-70).

Here, Count Three is the only surviving claim. It asserts a claim for conversion against Blake-Coleman.

Conversion is the intentional exercise of "dominion or control over a chattel which so seriously interferes with the

right of [the plaintiff] to control it that the [defendant] may justly be required to pay the [plaintiff] the full value of the chattel." *Addie v. Kjaer*, 51 V.I. 463, **473 (2009)(citing Restatement (Second) of Torts § 222A). "Mere nonfeasance or negligence, without such an intent, is not sufficient for conversion." *See* Restatement (Second) of Torts, § 223 (1965) at comment b; *see also* Restatement (Second) of Torts, § 224 (1965) ("One who does not intentionally exercise dominion or control over a chattel is not liable for a conversion even though his act or omission is negligent.") and Comment b (". . . nor is a bailee a converter when he merely fails to exercise proper care in keeping the goods entrusted to him, so that they are lost or stolen.").

Under the Restatement (Second) of Torts, "[a] bailee, agent, or servant who makes an *unauthorized* delivery of a chattel is subject to liability for conversion to his bailor, principal, or master unless he delivers to one who is entitled to immediate possession of the chattel." Restatement (Second) of Torts § 234 (1965) (emphasis added). The Restatement (Second) of Torts also provides that "[o]ne *in possession* of a chattel as bailee or otherwise who, on demand, refuses without proper qualification to surrender it to another entitled to its

immediate possession, is subject to liability for its conversion." *Id*. at § 237 (emphasis added).

The Restatement makes it clear that an agent is not subject to liability for torts committed by the agent's principal that do not implicate the agent's own conduct. Restatement (Third) of Agency § 7.01 cmt d (explaining that "there is no principal of 'respondeat inferior'").

Here, the contract of sale, signed by Watts and Morrell, required that Watts and Morrell make the escrow deposit. In addition to requiring an escrow deposit, the contract provided that the

> Buyer's offer must be accepted in writing by Seller within 1 day[] of the date Buyer signs this Contract. *If* this Contract is not accepted within that time period, then it shall terminate, and the earnest money deposit shall promptly be refunded to Buyer.

(Contract of Sale 2) (emphasis added). The contract further provided that the

> Buyer's obligations under this Contract are subject to and contingent upon the Buyer being able to obtain a commitment for a satisfactory mortgage loan on the property from a lending institution doing business in the U.S. Virgin Islands within thirty (30) days of the date of execution hereof by Seller. *If*, after diligent effort, the Buyer is unable to obtain a commitment for a satisfactory mortgage loan, this Agreement shall terminate and the Buyer's deposit shall be promptly refunded in full.

(Contract of Sale 5) (emphasis added).

Per the contract of sale, Watts was not entitled to the escrow funds until the time that she was unable to obtain sufficient financing. Watts asserts in her Second Amended Complaint that *Sauter* withdrew the escrow funds before Watts became entitled to such funds. Watts does not allege that *Blake-Coleman* undertook any action to help Sauter withdraw such funds. Rather, Watts's complaint makes it clear that Blake-Coleman did not have possession, constructive or otherwise, of the escrow funds at the time when Watts became entitled to immediate possession of such funds. Further, there is no indication that Blake-Coleman acted at the behest of Sauter, or anyone else, to deprive Watts of the escrow funds. As such, Blake-Coleman, as Sauter's agent, is not responsible for Sauter's alleged conversion. *See* Restatement (Third) of Agency § 7.01 cmt d.

Upon review of the remaining claim, the Court finds that it is not meritorious. Thus, the final *Poulis* factor weighs in favor of dismissal. *Cf. Buccolo*, 308 Fed. App'x 574, at n.1 ("[a] claim ... will be deemed meritorious when the allegations ... if established [], would support recovery by" the claimant) (internal citations omitted) (first alteration in the original).

## IV. CONCLUSION

All six of the *Poulis* factors weigh in favor of dismissal. Indeed, the factors demonstrate that dismissal of this matter is

an appropriate sanction for Watts's failure to appear at trial, or otherwise comply with this Court's orders. *See In re E Toys Inc.*, 263 Fed. App'x at 238 (affirming the district court's *Poulis* dismissal as a sanction for the litigant's "repeated failures to adhere to" court orders).

For the reasons discussed above, the Court will grant Blake-Coleman's motion to dismiss for failure to prosecute. An appropriate order follows.

```
                                  S_____
                                    Curtis V. Gómez
                                       Chief Judge
```